IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL KHOURY,

        Petitioner,

vs.

        Civil No. 21-cv-461-SPM

R.F. DUNBAR,

        Respondent.

## MEMORANDUM and ORDER

**McGlynn, District Judge:**

Pending before the Court is a First Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2241 (Doc. 16). For the reasons set forth below, the Court **DENIES** the petition and dismisses the case with prejudice.

### PROCEDURAL HISTORY

On May 7, 2021, Petitioner, Michael Khoury, filed a petition for writ of habeas corpus under 28 U.S.C. §2241 challenging the enhancement of his sentence under the Armed Career Criminal Act ("ACCA") (Doc. 1). At the time of filing, Khoury was incarcerated at Greenville-FCI, but has since been transferred to FCI-Jesup.[1] Accordingly, R.F. Dunbar, as Warden of FCI-Jesup, has been substituted as respondent.

---

[1] The transfer of petitioner to a facility outside this district does not divest this Court of subject matter jurisdiction. *Al-Marri v. Rumsfeld,* 360 F.3d 707, 717 (7th Cir. 2004). [J]urisdiction over a habeas corpus petition is determined when the petition is filed, even if an inmate is subsequently transferred. *Evans v. Romine,* 182 F.3d 921 (7th Cir. 1999).

On June 24, 2021, a first amended petition was filed in this Court wherein Khoury purports to rely on *Mathis v. United States*, ---U.S. ---, 136 S. Ct. 2243 (2016). On August 16, 2021, a response was filed on behalf of Dunbar wherein the government argued that the petition must be dismissed because Khoury waived his right to file a collateral attack (Doc. 18). On September 1, 2021, Khoury filed his reply reiterating his prior argument under *Mathis* and asserting that the government procedurally waived its right to enforce the waiver (Doc. 19).

## PREDICATE OFFENSE

On January 22, 2015, Khoury was indicted by a federal grand jury for Possession of a Weapon by a Felon in violation of 18 U.S.C. § 922 (g)(1) in the Southern District of Illinois. *United States v. Khoury*, Case No. 15-cr-30013-DRH[2] (CR 1). On May 12, 2015, Khoury pleaded guilty to that one count (CR. 19). On December 18, 2015, the Court found that the Guidelines sentencing range was 188 to 235 months and sentenced him to **188** months imprisonment.[3] (CR. 34).

On September 26, 2016, Khoury filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence in the criminal case in *Khoury v. U.S.,* 16-cv-1085-DRH[4] (SA. 1). Although inartfully drafted, Khoury referenced "*Mathis*", "predicate offense", "Armed Criminal Act", and "Edwards Pouliot", so it was determined that he was arguing: (1) that he no longer had the requisite predicate offenses to make him a career

---

[2] Documents contained within the criminal file shall be cited as "(CR. __)", while documents in this action shall be cited as "(Doc. __)".

[3] An initial PSR was filed on July 17, 2015 wherein Khoury's advisory guideline range was 235-293 months; however, a two-level enhancement was dropped for obstruction of justice, so a revised PSR was filed on August 5, 2015, which decreased Khoury's adjusted advisory guideline range.

[4] Documents contained within the 2255 file shall be cited as "(SA. __)".

criminal pursuant to 18 U.S.C. §924 (e); and, (2) that his sentence was contrary to *U.S. v. Edwards*, 836 F.3d 831 (7th Cir. 2016), or that his base offense level was miscalculated under the U.S. Sentence Guidelines (SA. 15).

*Edwards* involved two separate defendants, Justin Edwards and Ryan Pouliot, who pled guilty to firearms offenses and challenged the base level enhancement under the sentencing guidelines for a prior conviction of a "crime of violence". 836 F.3d 831, 832-33. Although *Edwards* involved prior Wisconsin offenses, the Seventh Circuit relied upon *Mathis* and the divisibility of burglary offenses and determined that burglary convictions could not serve as predicate offenses under §2K2.1(a). 836 F.3d at 836. In other words, because the state burglary offenses could have impacted the base offense level of the federal criminal offense, they should not be considered for enhancement purposes. *Id.*

With respect to Khoury's § 2255, the Court issued a Memorandum and Order on January 16, 2017 (SA 16). Within the Order, the Court noted that although the government conceded the argument under *Edwards*, it contested that Khoury was no longer a career criminal based upon his numerous prior convictions for residential burglary (SA 16). Following an analysis of Khoury's claims, the Court granted Khoury's motion based upon *Edwards*, but dismissed with prejudice the claims addressing his status as an armed career criminal (*Id.*). As such, the underlying criminal matter, 15-cr-30013, was set for resentencing (*Id.*).

The PSR prepared for the resentencing adjusted the base offense level from 20 to 14, adjusted the total offense level from 31 to 30, and adjusted the sentencing range from 188-235 months to 180-210 months (CR. 49). The criminal history remained

category VI (*Id.*). On May 11, 2017, Khoury was resentenced to 180 months in the Bureau of Prisons (*Id.*).

## LEGAL STANDARD

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner is also normally limited to only one challenge of his conviction and sentence under Section 2255. He or she may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

## ANALYSIS

I. Waiver

A. Law

A plea agreement may include a valid waiver of the right to appeal and to file a collateral attack, and such waivers are generally enforceable, with limited exceptions.

*Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016). The limited exceptions are where the plea agreement itself was involuntary, the defendant argues ineffective assistance of counsel with regard to the negotiation of the plea, the sentencing court relied on a constitutionally impermissible factor such as race, or the sentence exceeded the statutory maximum. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). A waiver of the right to bring a collateral attack on a conviction or sentence bars a §2241 petition; the waiver does not make the remedy afforded by §2255 inadequate or ineffective so as to open the door to a § 2241 petition. *Muse v. Daniels*, 815 F.3d 265, 266 (7th Cir. 2016). Further, a subsequent change in the law does not render an appeal waiver involuntary. *United States v. Vela*, 740 F.3d 1150, 1151 (7th Cir. 2014).

The Seventh Circuit has enforced appeal waivers against challenges to career offender designations. *United States v. Smith*, 759 F.3d 702 (7th Cir. 2014); *United States v. McGraw*, 571 F.3d 624 (7th Cir. 2009); *United States v. Standiford*, 148 F.3d 864 (7th Cir. 1998). *McGraw* is instructive; there, the defendant argued that the convictions used to categorize him as a career offender no longer constituted crimes of violence after *Begay v. United States*, 128 S.Ct. 1581 (2008). The Seventh Circuit enforced the waiver, noting that "We have consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." *McGraw*, 571 F.3d at 631.

B. Discussion

Ostensibly relying on *Mathis v. United States*, -- U.S. --, 136 S. Ct. 2243 (2016), Khoury argues that his prior Illinois convictions for residential burglary do not qualify as violent felonies for purposes of the career offender enhancement under U.S.S.G. §

4B1.2. Khoury also cites to two recent decisions by the Seventh Circuit to support this contention, *to wit*, *United States v. Glispie,* 978 F.3d 502 (7th Cir. 2020)*; United States v. Nebinger,* 987 F.3d 734 (7th Cir. 2021).

It is important to note that neither *Glispie* nor *Nebinger* were brought in habeas, and as such, are not dispositive. Although there was a plea agreement in place, *Glispie* retained the right to pursue a challenge to his designation as an Armed Career Criminal. 978 F.3d 502. *Nebinger* too, challenged the use of his burglary residential-burglary conviction as an ACCA predicate in his sentencing memorandum. 987 F.3d 734. Contrary to Khoury, neither Glispie nor Nebinger waived any issues surrounding the ACCA at sentencing. Accordingly, it is unnecessary to consider the substantive merits of Khoury's argument because his collateral attack is barred by the waiver in the plea agreement.

Khoury and the government entered into a written plea agreement in the underlying criminal case, a copy of which was also provided in this case (CR. 20) (Doc. 18-1). According to the plea agreement, Khoury's final offense level was 31 and his criminal history was category VI (CR 20, pp. 4-6). Khoury and the government agreed that his sentencing range would be 188-235 months (*Id.*)[5]. With respect to the ACCA, the Plea Agreement contained the following language, that was emphasized in bold font:

> "**Defendant also recognizes that based upon his criminal history, he qualifies for Armed Career Criminal status pursuant to 18 U.S.C. § 924 (e)(1); therefore, he shall be imprisoned not less than fifteen (15) years.**" (CR 20, p. 8).

---

[5] The PSR prepared for the resentencing adjusted the base offense level from 20 to 14, adjusted the total offense level from 31 to 30, and adjusted the sentencing range from 188-235 months to 180-210 months. The criminal history remained category VI.

Under Section III, the plea agreement also contained the following waiver of Defendant's right to appeal or file a collateral attack:

> 1. The Defendant understands that by pleading guilty, Defendant is waiving all appellate issues that might have been available if Defendant had exercised the right to trial. The Defendant is fully satisfied with the representation received from defense counsel. The Defendant acknowledges that the Government has provided complete discovery compliance in this case. The Defendant has reviewed the Government's evidence and has discussed the Government's case, possible defenses and defense witnesses with defense counsel. Defendant's attorney has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and possible defenses.
>
> 2. The Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government.
>
> 3. Defendant's waiver of his right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein; and 2) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B 1.1 0). The Government reserves the right to oppose such claims for relief.
> (CR. 20, pp. 8-9).

In response to the motion, petitioner first argues that the government cannot raise the waiver now because it did not raise the waiver in response to his § 2255 motion. He is incorrect. The § 2255 motion and the § 2241 petition are separate and distinct proceedings. There is no reason why the government cannot rely on the waiver in this case.

Khoury also argues that the waiver does not apply to any subsequent change in the law as declared by the Supreme Court or the Seventh Circuit "that is declared retroactive by those Courts and that renders the defendant actually innocent of the charges covered herein." However, even if *Mathis* announces a change in the law, it is not a change that would render Khoury innocent of the charge of possession of weapon by a felon. Contrary to his suggestion, the career offender designation is not a "charge."

Khoury may suggest that the terms of the waiver allow a claim that the Guidelines were applied incorrectly. However, this argument fails under the clear language of the plea agreement. The exception to the waiver clearly states that the waiver does not apply "if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater)." Khoury was not sentenced in excess of the Guidelines range *as determined by the Court*. Further, any argument that rests on the correctness of petitioner's claim for habeas relief, i.e., that he was incorrectly categorized as a career offender, does not serve itself to invalidate the waiver. "[I]f the very argument raised in apparent violation of an appeal waiver must be decided on the merits in order to know whether the sentence is unlawful (and thus the waiver is unenforceable), we would 'eviscerate the right to waive an appeal' by creating a rule 'that an appeal waiver is enforceable unless the

appellant would succeed on the merits of his appeal.'" *United States v. Carson*, 855 F.3d 828, 831 (7th Cir. 2017), citing *United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016).

Khoury does not argue that he was convicted of a nonexistent offense. He admitted at the change of plea hearing that he committed the offense charged (Doc. 19). He also signed the Plea Agreement and Stipulation of Facts (Docs. 20, 21). That does not demonstrate a miscarriage of justice.

Khoury does not argue that he was threatened or that the plea was not voluntary. To the contrary, Khoury was advised of his rights as well as the charges against him and the respective penalties in place at that time (CR 60). In *Brady*, the Supreme Court stated that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742 (1970). In the plea agreement, Khoury recognized that he qualified for ACCA status, it was not a judicial determination nor was it faulty at the time it was entered (CR 20, p. 8).

Because Khoury has not satisfied any of the exceptions, the plea agreement and resulting waiver are enforceable.

## II. Savings Clause

### A. Law

Under very limited circumstances, it is possible for a prisoner to challenge his federal conviction or sentence under Section 2241. Specifically, Section 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of

his detention." 28 U.S.C. § 2255(e). See also *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012)(stating that "'[i]nadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'")(citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002)); *United States v. Prevatte*, 300 F.3d 792, 798-799 (7th Cir. 2002)(noting that "savings clause" of Section 2255 applies to "a narrow class of cases" where the 2255 remedy "'is inadequate or ineffective to test the legality of [the prisoner's] detention.'").

The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) and stated: "[a] procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id*. at 611. In other words, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Following *Davenport* and its progeny, the Seventh Circuit developed a three-part test for determining whether Section 2255 is inadequate or ineffective so as to trigger the savings clause:

> Step #1: the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional interpretation, which the inmate could raise in a second or successive § 2255 motion);
>
> Step #2: the statutory rule of law in question must apply retroactively to cases on collateral review and could not have been invoked in a first § 2255 motion; and
>
> Step #3: a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of

> justice."
>
> *Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original).

## B. Discussion

For the first savings clause factor, Khoury invokes *Mathis v. United States*, --- U.S. ---, 136 S. Ct. 2243 (2016), but also cites to the Seventh Circuit holdings for the proposition that an Illinois prior conviction for residential burglary does not qualify as the predicate offense under the ACCA. See *Glispie,* 978 F.3d 502*; Nebinger,* 987 F.3d 734. In *Mathis*, the issue involved whether a prior conviction qualified as a predicate violent felony offense for purposes of the 15-year mandatory minimum enhancement under the Armed Career Criminal Act. Khoury cannot claim that § 2255 is insufficient when his prior Khoury's prior § 2255 was brought pursuant to *Mathis* and when the prior § 2255 resulted in a reduction in his sentence. Although Khoury claims this action is also brought pursuant to *Mathis*, he clearly relies upon the Seventh Circuit decisions in *Glispie* and *Nebinger* because, as explained above, Khoury argues that his prior offenses should not count because Illinois law now defines residential burglary more broadly than federal law. Thus, while Khoury contends he satisfies the first savings clause factor because *Mathis* is a case of statutory, rather than constitutional construction, he cannot rely upon circuit-level precedent. See *Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016). As such, he cannot satisfy this first element.

As to the second *Davenport* requirement, assuming arguendo the first could be satisfied by *Mathis,* Khoury could, and did, previously bring a timely and successful Section 2255 claim under *Mathis*. In some circumstances, a Section 2241 petitioner may

be able to show that his or her *Mathis* claim was previously unavailable, thus satisfying the second savings clause factor. See, e.g., *Chazen v. Marske,* 938 F.3d 851, 863 (7th Cir. 2019)(noting that petitioner satisfied the "prior unavailability" condition because his claim had clearly been foreclosed by the law in his circuit of conviction at the time he might have raised it in a Section 2255 motion). In Khoury's case; however, it is unnecessary to determine whether his residential burglary argument was previously foreclosed to him, because he cannot satisfy the third *Davenport* requirement – a showing that his conviction or sentence represents a miscarriage of justice.

The third *Davenport* requirement is satisfied by demonstrating "so fundamental a defect in [a] conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d at 611. The Seventh Circuit has also described a miscarriage of justice as "the possibility that the convictions hinged on conduct Congress never intended to criminalize." *Kramer v. Olson,* 347 F.3d 214, 218 (7th Cir. 2003). A miscarriage of justice may also occur where a defendant is sentenced under an erroneous mandatory sentencing range, but not where the error affects only the advisory Sentencing Guidelines.  See *Hawkins*, 706 F.3d at 823-824.

Clearly, Khoury can not satisfy the elements of the savings clause, thus his petition under § 2241 is barred pursuant to the plea agreement and waiver.

### C. Actual Innocence

### A. Law

Finally, in another attempt to salvage his § 2241 claim, Khoury claims actual innocence (Doc. 16). A credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298 (1995). The *Schlup* standard permits habeas review of defaulted claims only in the "extraordinary case" where the petitioner has demonstrated that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell,* 547 U.S. 548 (2006).

The Supreme Court has held that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013)*; Schlup v. Delo*, 513 U.S. 298, 329 (1995). In *McQuiggan*, the Supreme Court affirmed the *Schlup* standard for a credible showing of actual innocence, cautioning that "tenable actual-innocence gateway pleas are rare" and describing the *Schlup* standard as "demanding" and "seldom met." *McQuiggin*, 569 U.S. at 401, *citing Schlup*, 513 U.S. at 316.

Actual innocence means factual innocence, not mere legal insufficiency. *Sawyer v. Whitley,* 505 U.S. 333, 339 (1992). In other words, the government can argue any admissible evidence of petitioner's guilt, even if that evidence was not presented during the plea colloquy and would normally not have been offered. *Id.*

**B. Argument**

On May 12, 2015, Khoury pleaded guilty to being in possession of a firearm and to being a convicted felon (Doc. 19). Khoury also signed the plea agreement and stipulation of facts (Docs. 20, 21). Additionally, the judge went through the facts of the case on the record, as well as Khoury's understanding of them, before accepting the plea

as knowingly, intelligently and voluntarily made (Doc. 60).

On May 11, 2017, following his § 2255 petition, Khoury was resentenced by this Court (Doc. 49). It is important to note that there was no claim of actual innocence in the prior Section 2255 petition, and this Court is not inclined to hold that Khoury has shown this "demanding" and "seldom met" standard.

## CONCLUSION

In light of the foregoing, the Petition for a Writ of Habeas Corpus under 28 U.S.C. §2241 (Doc. 16) is **DENIED**. This action is **DISMISSED WITH PREJUDICE**. The Clerk is instructed to close the file and enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final

judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: November 2, 2021**

>    *s/Stephen P. McGlynn*
>    **STEPHEN P. McGLYNN**
>    **United States District Judge**